El Pueblo de Puerto Rico, demandante y apelado, *v.*
Antonio Castro Pérez, acusado y apelante.

Núm. 13501.—*Sometido:* Diciembre 14, 1948.   *Resuelto:* Diciembre 21, 1948.

*César Andréu Ribas,* abogado del apelante; *Hon. Procurador General Luis Negrón Fernández* y *J. Rivera Barreras, Fiscal del Tribunal Supremo,* abogados de El Pueblo; *Marcelino Romany,* abogado del taquígrafo de la corte inferior, interventor.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

Antonio Castro Pérez fué convicto por un jurado de un delito de asesinato en segundo grado y sentenciado por el Tribunal de Distrito de San Juan a cumplir una sentencia indeterminada de veinte a treinta años de presidio. Apeló para ante este Tribunal Supremo y para perfeccionar su recurso solicitó de la corte inferior se ordenara al taquígrafo que intervino en el juicio la preparación de la transcripción de la evidencia. Así lo ordenó la corte y entonces el taquígrafo, Sr. Pedro R. Arroyo, radicó una moción solicitando se ordenara al acusado consignar en la secretaría la suma de dos mil dólares, valor del trabajo taquigráfico a realizar por él. Radicó entonces el acusado una moción solicitando se ordenara al taquígrafo hacer la transcripción de evidencia libre del pago de los derechos que fija el arancel, por ser el acusado insolvente. Se opuso el taquígrafo a esta moción y celebrada una vista y presentada prueba testifical y documental por el acusado y testifical por el taquígrafo, la corte declaró sin lugar la moción del acusado por resolución que dice así:

"Por el resultado de la prueba practicada en este caso y considerando el hecho de que el acusado estuvo representado por dos abogados a quienes les satisfizo sus honorarios, y estimando el tribunal que el acusado está en condiciones de poder pagar los honorarios del taquígrafo por la transcripción de la evidencia en este caso, a los efectos de la apelación interpuesta para ante el Hon. Tribunal

Supremo de Puerto Rico, la corte declara sin lugar la moción solicitando el beneficio de pobreza a los efectos de la transcripción de evidencia.''

Solicitó el acusado la reconsideración la cual fué denegada por la corte. No conforme el acusado interpuso el presente recurso en el que imputa a la corte inferior la comisión de tres errores, los cuales, en efecto, plantean una sola cuestión, a saber, si el acusado demostró que él no está en condiciones por razón de su pobreza de pagar por la transcripción de la evidencia, según dispone la sección 5 de la Ley creando las plazas de taquígrafos reporters, etc., aprobada el 10 de marzo de 1904 (Comp. Est. y Cod. de P. R. de 1941, pág. 816) ([1]) o, como dice el artículo 356 del Código de Enjuiciamiento Criminal, si probó ''su insolvencia a la corte'' debió ésta ordenar al taquígrafo que preparara y radicara la transcripción libre de derechos.

El Fiscal de esta Corte, en su informe, después de analizar la prueba y a base de lo resuelto en el caso de *Pueblo* v. *Ramos,* 48 D.P.R. 213, hace constar que se allana a la revocación solicitada por el apelante.

Habiendo intervenido en la corte inferior el taquígrafo, Sr. Arroyo, también radicó alegato ante este Tribunal e intervino en la vista del caso, debidamente representado por abogado.

■■ Una moción como la presentada por el acusado en este caso va dirigida a la sana discreción de la corte y su actuación no debe ser alterada en apelación a menos que el récord demuestre que abusó de dicha discreción. *Pueblo* v. *Lawton y Comas, Interventor,* 46 D.P.R. 184; *Pueblo* v. *Cruz,* 57 D.P.R. 88; *Camacho* v. *Corte,* 67 D.P.R. 802. Para deter-

---

([1])Esta sección, en lo pertinente, dispone que ''. . . en los casos en que después de una convicción el acusado en una causa criminal pruebe al tribunal, por medio de una declaración jurada, o *por otro ·medio,* que él no está en condiciones por razón de su pobreza de pagar por la referida copia . . . el taquígrafo expedirá gratis dichas copias.''

minar si la corte inferior erró en el presente caso, precisa que examinemos la prueba que tuvo ante su consideración.

■■ La prueba del acusado consistió en su propia declaración y en las de los testigos Julián Molinary, Jesús Castro Rodríguez, Lic. César Andréu Ribas y en prueba documental. El taquígrafo, Sr. Arroyo, declaró como único testigo en oposición.

La prueba del acusado, en síntesis, tendió a demostrar que su padre Jesús Castro Rodríguez recibe una pensión del Gobierno Federal de $200 mensuales y su madre que es maestra recibe $100 mensuales; que su padre es dueño de una casa de maderas, en Santurce, valorada en $2,700 a los efectos contributivos, en la cual viven su esposa, dos hijas, una nieta, el acusado y su esposa, y la cual hipotecó al Sr. Julián Molinary para garantizarle un préstamo de $2,500, con los cuales su padre pagó los gastos de la defensa del acusado en este caso de asesinato, habiéndole pagado a los Lics. Cayetano Coll y Cuchí y César Andréu Ribas unos $1,890; que el Sr. Molinary no está dispuesto a prestar más dinero con garantía de la casa y que el padre del acusado no estaría en condiciones de cumplir con el pago de un nuevo préstamo; que el acusado no tiene trabajo, vive con su esposa en casa de su padre y tiene otros casos criminales pendientes de juicio en los cuales su abogado es el Lic. Andréu Ribas a quien podría pagarle "si me pego en un *pool* o algo"; que el taquígrafo, Sr. Arroyo, pidió por el récord taquigráfico, primero $1,000, luego $2,500 y en definitiva de $1,500 a $2,000; que debido a su situación él no ha podido conseguir trabajo y sus amigos se han negado a ayudarle; que es insolvente; que es veterano y podría recibir $90 de pensión para estudiar si lo admitieran en la escuela, pero que no está recibiendo nada del gobierno.

El taquígrafo, Sr. Arroyo, declaró que de primera intención valoró su trabajo en $1,000 y así se lo informó al acusado y a su abogado, Lic. Andréu Ribas; que el acusado había

quedado en conseguirle $500 para empezar el trabajo y $500 adicionales más adelante; que llamó posteriormente al acusado y le informó que el récord valía $1,500; que después de haber revisado las cuarenta y tres libretas que llenó durante el juicio calcula que su trabajo, según el arancel, vale $1,683.45. El Sr. Arroyo no refutó, en forma alguna, la prueba del acusado en cuanto a la situación económica de éste, limitándose, como hemos visto, a valorar su trabajo.

La corte inferior basó su resolución denegatoria: 1⁰. en el hecho de que el acusado estuvo representado por dos abogados a quienes satisfizo sus honorarios y 2⁰. por estimar el tribunal que el acusado está en condiciones de poder pagar los honorarios al taquígrafo. En cuanto al primer motivo, ya hemos resuelto que no está justificado, pues el acusado "pudo haber pagado su defensa en el juicio y no encontrarse en condiciones de pagar la transcripción de la evidencia". *Pueblo* v. *Ramos,* supra, pág. 215. Y en el presente caso ese fundamento está menos justificado aún pues se demostró que quien pagó dichos honorarios fué el padre del acusado y que para hacerlo tuvo que hipotecar la única propiedad que posee. Los padres son llamados a menudo a realizar grandes sacrificios por sus hijos; éstos a veces no los merecen y otras, no pueden librarse de las consecuencias de sus actuaciones al margen de la ley, no obstante los buenos deseos de sus padres. *Pueblo* v. *Rivera Torres,* pág. 411, ante. Empero, no estaríamos justificados en resolver que el padre del acusado en este caso debe hipotecar de nuevo o vender su casa residencial para pagarle al taquígrafo. No estamos, después de todo, juzgando la solvencia o insolvencia del Sr. Jesús Castro Rodríguez, sino la del acusado.

Esto nos lleva a considerar el segundo fundamento de la resolución apelada. Hemos resuelto que el peso de la prueba recae sobre el apelante para demostrar que no está en condiciones de pagar, *Pueblo* v. *Lawton,* supra; aun cuando sea insolvente. *Pueblo* v. *Cruz,* supra. Empero, en

*Camacho* v. *Corte,* supra, pág. 804, dijimos que "en una situación similar en casos criminales, hemos indicado que el peticionario no viene obligado a demostrar que es absolutamente insolvente, desamparado, y sin medios de vida. Más bien el requisito es que por razón de pobreza no puede pagar los derechos." (Citas.) Esta misma doctrina ha sido expuesta hace pocos días por el Tribunal Supremo de Estados Unidos en el caso de *Adkins* v. *DuPont,* resuelto el 22 de noviembre de 1948, en la siguiente forma:

". . . Decir que ninguna persona tiene derecho al beneficio de la ley sobre pobreza hasta que haya jurado aportar a los gastos del caso el último centavo que tiene o que puede conseguir, y de esta manera quedar completamente en la inopia, equivaldría a interpretar el estatuto en tal forma que colocaría a sus beneficiarios en la categoría de carga pública. El público no se beneficiaría si en un caso específico se le relevara de pagar costas, si se le va a imponer el gasto de mantener a la persona a quien se le ha concedido el beneficio de pobreza. Tampoco sería deseable el resultado si el efecto de esta interpretación estatutaria fuese el de obligar a un litigante a desistir de lo que podría ser una reclamación meritoria con el fin de no caer en la miseria. Creemos que es improcedente una interpretación de la ley que nos lleve a tales consecuencias. Véanse los casos citados en 6 A.L.R. 1281–1287 que contienen una discusión en cuanto a si, bajo este estatuto y otros similares, debe demostrarse una completa insolvencia."

La prueba del apelante en cuanto a su insolvencia y de su imposibilidad de pagar los derechos del taquígrafo no fué contradicha. Aun cuando esto por sí solo no sería suficiente en un caso en el cual la prueba del acusado dejara de demostrar esos hechos, como sucedió en el caso de *Pueblo* v. *Cruz,* supra, en el presente consideramos que la del apelante sí los estableció.

Arguye el abogado del taquígrafo que en el mencionado caso de *Pueblo* v. *Cruz,* resolvimos que el apelante debió haber radicado un *affidavit* de méritos en apoyo de su solici-

tud, pues debe demostrarle al tribunal que la apelación tiene méritos. El *dictum* a ese efecto en el caso de *Cruz,* no está sostenido por las leyes que regulan esta materia. La sección 5 de la Ley de 1904, supra, lo único que exige es que el acusado "por medio de una declaración jurada o por otro medio" pruebe que no está en condiciones "por razón de su pobreza de pagar" la transcripción. Y el artículo 356 del Código de Enjuiciamiento Criminal va más lejos aún, pues dispone que cuando el acusado apelante "hubiere probado su insolvencia a la corte, *será deber de ésta* ordenar al taquígrafo que prepare y radique la transcripción libre de derechos." (Bastardillas nuestras.) Ninguna de estas leyes requiere la radicación de un *affidavit* de méritos en cuanto a la apelación en su fondo. En casos civiles la sección 7 de la Ley núm. 17 de 1915 (pág. 45), según enmendada por la Ley núm. 58 de 1942 ((1) pág. 569), sí exige que para iniciarse una acción en *forma pauperis,* se acompañe a la declaración jurada sobre insolvencia una copia de la demanda y únicamente si ésta es "suficiente en derecho" a juicio del juez, es que procede concederse la insolvencia para litigar.

■ Por último sostiene el interventor que habiendo podido el apelante preparar una exposición del caso para perfeccionar su apelación, de acuerdo con el artículo 356, supra, tampoco abusó de su discreción la corte inferior al denegar la moción de insolvencia. Pero es que tanto la Ley de 1904, supra, como el artículo 356, supra, conceden a un acusado insolvente el derecho de perfeccionar su apelación por medio de la transcripción de evidencia sin que ese derecho esté limitado en el sentido de que deba hacerlo mediante la exposición del caso bajo determinadas circunstancias. Si así lo resolviéramos nunca podrían los acusados insolventes obtener la transcripción de evidencia libre de derechos. Corresponde a la rama legislativa regular más restrictivamente, si así lo desea, el derecho concedido, bien exigiendo un *affidavit*

de méritos o limitando a los acusados insolventes a utilizar la exposición del caso en sus apelaciones.([2])

*Debe revocarse la resolución apelada y dictarse otra declarando que el apelante es insolvente y tiene derecho a que el taquígrafo haga la transcripción de evidencia gratuitamente, dentro del término que señale la corte inferior.*

Los Jueces Asociados Sres. Marrero y Negrón Fernández no intervinieron.

([2])Podría, también, si lo desea, adoptar la Regla 75(*m*) de las Reglas Federales de Procedimiento Civil en cuanto a Apelaciones en Forma Pauperis que dispone que: "La corte de distrito, al solicitársele permiso para litigar *in forma pauperis*, puede fijar alguna manera diferente y más económica mediante la cual pueda prepararse y radicarse el récord en apelación, de suerte que el apelante pueda presentar su caso al tribunal de apelaciones. 329 U.S. 870."

Es de notarse que la Regla 39(*b*) (1) de las Reglas de Procedimientos Criminales Federales dispone que "Las reglas y práctica que gobiernan la preparación y forma del récord en apelación en acciones civiles se aplicarán al récord en apelación en todos los procedimientos criminales, excepto lo que en contrario se disponga en estas reglas."